# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **In re:**<br>**Issacson Steel, Inc.,**<br>      Debtor | Chapter 11<br>Case No. 11-12415-JMD |
| **In re:**<br>**Isaacson Structural Steel, Inc.,**<br>      Debtor | Chapter 11<br>Case No. 11-12416-JMD<br>**Jointly Administered** |

## UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR TO ENTER INTO WORKING CAPITAL FINANCING ARRANGEMENT WITH CATE STREET CAPITAL, INC.

To the Honorable J. Michael Deasy, United States Bankruptcy Judge:

Pursuant to 28 U.S.C. § 586 and 11 U.S.C. § 364, William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**"), submits this Objection to the Debtor's Motion for Order Authorizing Debtor to Enter into Working Capital Financing Arrangement with Cate Street Capital, Inc. ("**Motion to Borrow**") as follows:

### I.     PROCEDURAL STATUS

1.     On June 22, 2011 ("**Petition Date**"), Isaacson Steel, Inc. and Isaacson Structural Steel, Inc. filed skeletal voluntary chapter 11 petitions with the Court. The debtors' cases have not been substantively consolidated, but are being jointly administered by the Court. *See* Court Docket Item No. 33, Order dated July 8, 2011.

2.     The United States Trustee appointed an Official Committee of Unsecured Creditors in the above-captioned cases on June 30, 2011.

3. On July 1, 2011, Isaacson Structural Steel, Inc. ("**ISSI**" or "**Debtor**") filed the present Motion to Borrow. The Debtor seeks authority to obtain post-petition financing from Cate Street Capital, Inc. ("**Cate Street**") in the form of a short-term bridge loan in the maximum amount of $500,000, and to grant Cate Street post-petition security interests in ISSI's assets. The terms of the proposed loan are set forth in the draft loan agreement ("**Loan Agreement**") attached as Exhibit A to the Motion to Borrow.

## II. APPLICABLE LEGAL STANDARDS

4. Section 364(c) permits the Court to authorize post-petition financing secured by property of the estate if the debtor in possession is unable to obtain credit as an administrative expense:

> (c) If the trustee is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt--
>
> (1) with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
>
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

5. Pursuant to 11 U.S.C. § 364(d), a chapter 11 debtor may obtain credit secured by a lien with priority which is senior or equal to that of an existing lien if:

> (A) the trustee is unable to obtain such credit otherwise; and

> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.
>
> (2) In any hearing under this subsection, the trustee has the burden of proof on the issue of adequate protection.

11 U.S.C. § 364(d).

6. The Court's discretion in approving post-petition financing "is not unfettered." *In re Defender Drug Stores, Inc.*, 145 B.R. 312, 317 (9th Cir. BAP 1992). Because "[d]ebtors in possession generally enjoy little negotiating power with a proposed lender, particularly when the lender has a prepetition lien on cash collateral," courts must "look to whether the proposed terms would prejudice the powers and rights that the Code confers for the benefit of all creditors and leverage the Chapter 11 process by granting the lender excessive control over the debtor or its assets as to unduly prejudice the rights of other parties in interest." *Id. See also In re Tenney Village Co., Inc.,* 104 B.R. 562, 567-570 (Bankr. D. N.H. 1989)(denying approval of secured financing agreement where execution of agreement violated debtor's fiduciary obligations to estate and would "disarm the Debtor of all weapons usable against [the bank] for the bankruptcy estate's benefit").

7. In seeking approval of post-petition financing, the movant bears the burden of proving the following:

> first, that the proposed financing is an exercise of sound and reasonable business judgment; second, that no alternative financing is available on any other basis; third, that the financing is in the best interests of the estate and its creditors; and, as a corollary to the first three points, that no better offers, bids, or timely proposals are before the Court.

*In re Phase-I Molecular Toxicology Inc.*, 285 B.R. 494, 495-496 (Bankr. D. N.M. 2002)(citations omitted). "Other iterations of these basic requirements include showing

that 1) the financing arrangement is necessary to preserve assets of the estate, and 2) the arrangement is otherwise fair and reasonable." *Id.* (citations omitted).

III. <u>ARGUMENT</u>

<u>The Debtor Has Not Demonstrated that the Proposed Financing Terms Are Fair and Reasonable.</u>

8. The Debtor bears the burden of demonstrating that the loan is fair and reasonable. *In re Phase-I Molecular Toxicology Inc.,* 285 B.R. at 495-496. The United States Trustee objects that the Debtor has not met this burden with regard to a number of the proposed financing terms.

    a. <u>Control over Debtor's Management and Reorganization</u>: The proposed loan provisions grant Cate Street an inordinate amount of control over the Debtor's operations, impeding the Debtor's exercise of its fiduciary duties. The proposed terms would prohibit the Debtor from using the loan proceeds for any purpose other than the "Permitted Uses" defined in the agreement. *See* Loan Agreement, ¶ 6(f)(iii). The proposed loan terms would impose restrictions on the Debtor's ability sell assets, transfer funds, make distributions and investments, enter into leases, and purchase equipment and other fixed assets. *See id.*, ¶7 (pp. 11-13). The Loan Agreement also irrevocably appoints Cate Street as the Debtor's "attorney in fact" to execute any instrument or deed to implement the exercise of Cate Street's rights under the agreement. *See id.*, ¶ 10; *see also* Security Agreement, ¶12. These provisions, which cede control over the Debtor's management and reorganization to Cate Street, violate the Debtor's fiduciary duties to its

4

creditors and estate; the Bankruptcy Code permits a debtor's business to be operated "only by a debtor or trustee." *In re Tenney Village*, 104 B.R. at 568.

    b. <u>Relief from Stay without Further Order of the Court</u>: The proposed financing terms include provisions lifting the automatic stay without further order of the Court and waiving the Debtor's right to notice and demand in the event of default. *See* Loan Agreement, ¶¶ 9, 11(g). Upon default, the Loan Agreement permits Cate Street, without notice and demand, to: declare all obligations due and payable; cease advancing money and credit; exercise set-off rights; and proceed against any collateral. *See id.*, ¶ 9. Events of default include the appointment of a chapter 11 trustee, the conversion of the case to chapter 7, and the filing of any motion to amend the financing order. *See id.,* ¶ 8(d). These provisions would effectively give Cate Street the right to terminate the bankruptcy case without further notice or hearing, and without providing the Debtor or other parties in interest with an opportunity to raise appropriate objections. The Debtor has a fiduciary duty to file a Chapter 11 plan (*In re Tenney Village*, 104 B.R. at 569) and should not be permitted to effectively barter away control over its reorganization at the outset of the case.

    c. <u>Waiver/Release of Right to Surcharge Collateral under 11 U.S.C. §506(c) and Absence of Carve-Out for Administrative Claims</u>: According to the Motion to Borrow, the proposed financing terms provide Cate Street with a release of section 506(c) claims and insulate the collateral from any surcharges under 506(c). *See* Motion to Borrow at p. 3 ("The Lender's collateral shall not be subject to statutory charges for preservation or disposition under Section 506(c) of the Bankruptcy Code."). The United States Trustee

objects to the approval of any such provisions as contrary to public policy. *See e.g.*, *In re Brown Bros., Inc.,* 136 B.R. 470, 474 (W.D. Mich. 1991)(holding that cash collateral order granting post-petition lien on all assets and attempting to immunize lender from payment obligations under 11 U.S.C. § 506(c) to be unenforceable). *See also, c.f., In re Ridgeline Structures, Inc.*, 154 B.R. 831, 832 (Bankr. D. N.H. 1993)(finding proposed stipulation and order insulating secured party from administrative charges under 11 U.S.C. § 506(c) no matter what action or inaction might occur to be unenforceable and violative of public policy).

        d.      <u>Appointment of Subsequent Trustee</u>:  The proposed terms make the provisions and conditions of the financing order binding upon a subsequently appointed trustee, while at the same time providing that the financing order shall terminate upon the appointment of a trustee.  *See* Loan Agreement, ¶¶ 8(d), 11(f).  The United States Trustee requests that these seemingly conflicting provisions be clarified, but generally objects to any provision that would bind a subsequent trustee or otherwise impair the ability to find candidates to serve as trustee if necessary.

        e.      <u>Payment of Funds into Passumpsic Bank Account</u>:  Under the Loan Agreement, the Debtor would be required to open a new bank account with its "senior lender," Passumpsic Bank, and to maintain the account for the purposes of receiving draws under the note, receiving payments related to the collateral, and receiving loan proceeds. *See* Loan Agreement, ¶ 6(f).  The United States Trustee objects to the Debtor maintaining an account with Passumpsic Bank, or any other bank that is not a United States Trustee-approved depository, especially where the anticipated proceeds of the loan exceed the

current limits of FDIC insurance. Section 345(b) of the Bankruptcy Code provides that if the aggregate amount of funds on deposit for a particular estate exceeds that which is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States, or backed by the full faith and credit of the United States, the funds shall be deposited in a banking institution that has posted either a bond in favor of the United States or has deposited securities with the Federal Reserve Bank in an account maintained by the United States Trustee.

IV. CONCLUSION

The Debtor has not met its burden under 11 U.S.C. § 364 of demonstrating that the terms of the proposed financing are fair, reasonable or in the best interests of its creditors and bankruptcy estate. The Motion to Borrow should therefore be denied.

WHEREFORE, the United States Trustee submits this Objection to Debtor's Motion for Order Authorizing Debtor to Enter into Working Capital Financing Arrangement with Cate Street Capital, Inc.

> Respectfully submitted,
>
> WILLIAM K. HARRINGTON,
> UNITED STATES TRUSTEE

Dated: July 12, 2011         By:    /s/ Ann Marie Dirsa
                                    Ann Marie Dirsa BNH# 06121
                                    Office of the United States Trustee
                                    1000 Elm Street, Suite 605
                                    Manchester, NH 03101
                                    (603) 666-7908

7

CERTIFICATE OF SERVICE

       I hereby certify that on this July 12, 2011, I caused to be served a copy of the foregoing by ECF/CM to:

David P. Azarian, Esq.
Edward C. Dial, Jr., Esq.
William S. Gannon, Esq.
Holly Kilibarda, Esq.
Daniel W. Sklar, Esq.
Gregory A. Moffett, Esq.
Charles R. Bennett, Jr., Esq.
Matthew R. Johnson, Esq.

                                /s/ Ann Marie Dirsa
                                Ann Marie Dirsa